UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SCOTT CLEVENGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 1:20-CV-230-RLJ-SKL |
| | ) |
| CENTURION, | ) |
| TONY PARKER, | ) |
| JOHN DOE, and | ) |
| JANE DOE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

The Court is in receipt of a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 [Doc. 2], and a motion for leave to proceed *in forma pauperis* [Doc. 1]. The Court will address Plaintiff's motion to proceed *in forma pauperis* prior to screening the complaint in accordance with the Prison Litigation Reform Act ("PLRA").

### I.     MOTION TO PROCEED *IN FORMA PAUPERIS*

A review of Plaintiff's certified inmate trust account record demonstrates that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**.

Because Plaintiff is an inmate in the Bledsoe County Correctional Complex, he is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period

preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Attorney General for the State of Tennessee and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. PLRA SCREENING

### A. PLAINTIFF'S RELEVANT ALLEGATIONS

Plaintiff was diagnosed with gastroesophageal reflux disease ("GERD")[1] in 2000 and was prescribed medication to treat the condition [Doc. 2 p. 3]. Plaintiff was later arrested in 2006 and

---

[1] According to the Mayo Clinic:

> Gastroesophageal reflux disease (GERD) occurs when stomach acid frequently flows back into the tube connecting your mouth and stomach (esophagus). This backwash (acid reflux) can irritate the lining of your esophagus.
>
> Many people experience acid reflux from time to time. GERD is mild acid reflux that occurs at least twice a week, or moderate to severe acid reflux that occurs at least once a week.
>
> Most people can manage the discomfort of GERD with lifestyle changes and over-the-counter medications. But some people with GERD may need stronger medications or surgery to ease symptoms.

placed in the Grainger County Jail, where he was treated with omeprazole (the generic form of Prilosec) [*Id.*]. When Plaintiff was placed in the custody of the Tennessee Department of Correction ("TDOC") in 2007, medical personnel continued to treat Plaintiff's condition with omeprazole [*Id.*]. Plaintiff visited an upper gastrointestinal specialist in 2013 and 2016, where it was confirmed that he had a chronic esophageal disease and that his treatment with omeprazole should continue [*Id.* at 3-4].

Plaintiff's prescribed course of treatment was apparently continued without incident until March 26, 2020, when Plaintiff was called to the medical clinic at the Bledsoe County Correctional Complex ("BCCX") for a chronic care visit and was advised by Dr. Emma Rich that, despite the seriousness of his condition, she was unsure whether she would be able to get Plaintiff's prescription refilled [*Id.* at 4]. Plaintiff did ultimately receive a 90-day supply of omeprazole on that occasion, but at his next chronic care visit on June 17, 2020, a physician's assistant advised him that he would no longer receive omeprazole and would have to purchase the medication from the prison's commissary [*Id.*].

On June 24, 2020, Plaintiff filed a grievance against the physician's assistant — a medical professional presumably employed by Defendant Centurion, TDOC's contract medical provider [*Id.* at 5]. In that grievance, Plaintiff alleged that Centurion's failure to treat his verified and chronic medical condition is a violation of the Eighth and Fourteenth Amendments, and that it is driven by Centurion's desire to increase profits [*Id.*]. Plaintiff's grievance was denied by a designee of Defendant Tony Parker, TDOC's commissioner [*Id.*].

---

*See* "Gastroesophageal reflux disease (GERD)," *available at* https://www.mayoclinic.org/diseases-conditions/gerd/symptoms-causes/syc-20361940 (last accessed August 20, 2020).

3

Case 1:20-cv-00230-RLJ-SKL   Document 5   Filed 09/28/20   Page 3 of 9   PageID #: 34

Plaintiff contends that he cannot afford to purchase an effective dose of omeprazole from the prison's commissary, and that Centurion has a practice of manipulating TDOC's policy requiring all non-indigent inmates to purchase medication from commissary [*Id*. at 5-7]. He contends that Defendant Tony Parker bears responsibility for this wrongdoing, as he enacted the policy being manipulated by Centurion [*Id*. at 8]. Plaintiff further asserts that John/Jane Doe is a responsible party in this action, as the unknown Defendant(s) represent "the administrative overseer and[/]or Doctor that made the administrative decision" at Centurion's Nashville headquarters "to stop providing the Plain[ti]ff prescription medication" and the supervision of a medical professional for his chronic condition [*Id*. at 7].

**B.    SCREENING STANDARD**

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish

4

undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

**C.     ANALYSIS**

It is well settled that the Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

5

exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

### 1. Tony Parker

Plaintiff asserts that Defendant Parker violated his constitutional rights by (1) enacting the policy Centurion is using to deny him treatment, and (2) failing to correct his designee's denial of Plaintiff's grievance. Neither of these allegations, however, state a constitutional claim against Defendant Parker in either his individual or official capacity.

First, Tony Parker does not bear legal responsibility for Centurion's alleged manipulation of a TDOC policy, as there is no allegation that he had any involvement in the decision to deny Plaintiff medical treatment under an otherwise valid TDOC policy. *See, e.g, Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (noting the absence of *respondeat superior* liability in § 1983 and holding plaintiff must allege "a policy or well-settled custom of the [entity] was the 'moving force' behind the alleged deprivation" of his rights).

Further, Plaintiff fails to state a viable claim against Defendant Parker regarding his failure to correct Plaintiff's grievance response, "[t]he 'denial of administrative grievances or the failure

6

to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Therefore, Defendant Tony Parker will be **DISMISSED** from this action.

### 2. John/Jane Doe

Plaintiff may be able to state a claim against the individual(s) responsible for refusing to continue his prescription medication. Therefore, the Court will not dismiss John/Jane Doe at this time, though the Court notes that process cannot issue against an unnamed individual. Rather, Plaintiff should timely move to substitute the individual(s) responsible once he is able to conduct discovery in this matter.

### 3. Official-Capacity Defendants

Plaintiff's suit against the John/Jane Doe Defendants in their official capacities is the equivalent of suit against Centurion. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (noting an official-capacity claim "seeks damages not from the individual officer, but from the entity from which the officer is an agent"). Therefore, as long as Centurion is a Defendant, the claims against its employees in their official capacities is redundant and subject to dismissal. *See, e.g., McNutt v. Centurion Med.*, No. 2:17-CV-212, 2018 WL 735227, at *3 (E.D. Tenn. Feb. 5, 2018).

Centurion cannot be subject to § 1983 liability merely because it has employed someone who violated Plaintiff's constitutional rights; that is, it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to demonstrate that Centurion bears any liability, Plaintiff must identify a policy or custom of the entity and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and

7

quotation marks omitted); *see also Braswell*, 419 F. App'x at 627 (holding plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights).

Here, Plaintiff maintains that he has a chronic, serious medical condition that Defendant Centurion is refusing to treat, despite his inability to afford a comparable medication from the commissary. He has alleged that Centurion maintains this practice in order to cut costs and increase profits to the detriment of inmates. Therefore, accepting Plaintiff's allegations as true, the Court finds Plaintiff has stated a plausible claim against Centurion for the denial of medical care, and the Court will allow the case to **PROCEED** as to this Defendant.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, to the Attorney General for the State of Tennessee, and to the Court's financial deputy;

5. Plaintiff's claim that Centurion and John/Jane Doe have denied him adequate medical care shall **PROCEED**;

6. The Clerk is hereby **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Centurion;

7. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that failure to return the completed service packet within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

9. Defendant shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

10. Defendant Tony Parker is **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or its counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within (14) fourteen days of any change in address may result in the dismissal of this action.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge